# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DAVID LEMON,

      Plaintiff,

                                       Case No. 1:24-cv-663

    v.

                                       JUDGE DOUGLAS R. COLE

EVANS FOOD GROUP, LTD., et al.

      Defendants.

## OPINION AND ORDER

      Plaintiff David Lemon sued his employer, Defendant Evans Food Group, Ltd. (Evans), and two of his supervisors, Defendants Chad and Tamela Taulbee, in state court, asserting solely state-law claims. Defendants removed the case to this Court under its diversity jurisdiction, despite Lemon and the two individual Defendants (the Taulbees) all sharing Ohio citizenship. According to Defendants, Lemon fraudulently joined the two individual Defendants solely in an effort to defeat federal jurisdiction, and thus this Court should ignore them in assessing complete diversity. (Not. of Removal, Doc. 1). Lemon disagrees. So he filed a Motion to Remand to State Court and Motion for Attorneys' Fees (Doc. 9). For the reasons explained below, the Court **GRANTS IN PART** Lemon's motion. Specifically, the Court **REMANDS** the case to state court, but it **DENIES** his request for attorney's fees, as Defendants' removal argument wasn't objectively unreasonable.

## BACKGROUND[1]

COVID-19, and the response to it, created a host of workplace problems. Plaintiff David Lemon's time working for Defendant Evans Food Group, Ltd. (Evans) is, by his telling, one example of those problems. He began working at one of Evans's plants in February 2021, supervised by Defendants Chad and Tamela Taulbee.[2] (Compl., Doc. 3, #79). At the time, he was sixty-four years old, and—as Defendants were aware—had diabetes and a heightened risk of complications from COVID-19. (*Id.*). Some unnamed co-workers at Evans gave Lemon grief about his age "continually," calling him "old man" or "old fart" throughout his tenure. (*Id.* at #80). Even worse, just a few months after he started work, Lemon came down with a case of COVID-19 bad enough to send him to the hospital. (*Id.*). Then, when he returned to work, Chad fired him for "allegedly not complying with the masking policies more than a month prior to [Lemon's] contraction of COVID-19." (*Id.*). The company then replaced him with "a significantly younger individual [who] … was not disabled and had not recently taken time off due to disability or illness." (*Id.*).

Believing he'd been treated unlawfully, Lemon sued Evans and the Taulbees in the Scioto County Court of Common Pleas. (Not. of Removal, Doc. 1). He raised five claims under Ohio Revised Code Chapter 4112: (1) age discrimination against Evans

---

[1] In recounting the facts of this case, the Court relies on the allegations in Lemon's Complaint (Doc. 3), accepting them as true and resolving all factual ambiguities in his favor as it must at this stage. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Nonetheless, the Court reminds the reader that they are still just that—allegations.

[2] Because the Taulbees share a last name, the Court will refer to them by their first names to avoid confusion, unless referring to both collectively.

(Count One); (2) disability discrimination against Evans (Count Two); (3) "regarded-as" disability discrimination against Evans (Count Three); (4) retaliation against all Defendants (Count Four); and (5) aiding and abetting discrimination and retaliation against the Taulbees (Count Five). (Doc. 3, #81–86). Importantly, he did not raise any corresponding federal claims, for example under the ADEA or ADA.

Acting together, the three Defendants removed the case to this Court, purportedly under the Court's diversity jurisdiction. (Doc. 1, #2). For a federal court to exercise its diversity jurisdiction, the removing party must establish two elements: "(1) the action is between citizens of different states; and (2) the amount in controversy exceeds $75,000." *Miller v. Standard Ins. Co.*, No. 1:21-cv-136, 2021 WL 5051971, at *2 (S.D. Ohio Nov. 1, 2021). "As to the former, 'complete' diversity is necessary," meaning that "no plaintiff can be a citizen of the same state as any defendant." *Id.* That presented at least something of a problem for Defendants: Lemon pleaded that he's an Ohio citizen and that the Taulbees are, too. (Doc. 3, #79). Recognizing that Lemon's and the Taulbees' shared citizenship would otherwise defeat this Court's diversity jurisdiction, Defendants invoked the "fraudulent joinder" doctrine to argue that "[t]he [Taulbees'] citizenship … should be disregarded for purposes of determining jurisdiction … because the Complaint presents no colorable claim against [them]." (Doc. 1, #3).

After removing the case, the Taulbees immediately moved to dismiss the claims against them. (Doc. 6). But the parties collectively pumped the brakes on that motion, agreeing to stay briefing until the Court decided the motion currently before

3

it: Lemon's motion to remand and for attorney's fees, (Doc. 9). (Doc. 8; 12/10/24 Not. Order). In that latter motion, Lemon argues that his Complaint states at least one colorable claim against the Taulbees, thus thwarting Defendants' fraudulent-joinder argument, and that he is entitled to attorney's fees incurred as a result of the improper removal. (*See generally* Doc. 9). Defendants responded, (Doc. 13), and Lemon replied, (Doc. 15), so the matter is ripe for the Court's review.

## LEGAL STANDARD

A motion to remand challenges the Court's subject-matter jurisdiction over the dispute removed from state court. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). Defendants can remove a case from state to federal court if the federal forum would have had original subject-matter jurisdiction. 28 U.S.C. § 1441. One way a defendant can show original subject-matter jurisdiction is to demonstrate that, at the time of removal, the case met the requirements of diversity under 28 U.S.C. § 1332. *Total Quality Logistics, LLC v. Summit Logistics Grp., LLC*, 606 F. Supp. 3d 743, 747 (S.D. Ohio 2022). Diversity jurisdiction has two elements: (1) no plaintiff may be a citizen of the same state as any defendant; and (2) the amount in controversy must exceed $75,000. *Id.* If both requirements are met, the case is removable to federal court.

But what happens if a plaintiff joins a non-diverse party as a defendant solely to defeat federal jurisdiction? In those situations, the doctrine of fraudulent joinder—"a judicially created doctrine that provides an exception to the requirement of complete diversity"—kicks into play. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428,

4

432 (6th Cir. 2012). Under that doctrine, even a case with non-diverse defendants can be removed "if it is 'clear that there can be no recovery [against the non-diverse defendants] under the law of the state on the cause alleged or on the facts in view of the law.'" *Id.*

The removing party bears the burden of showing fraudulent joinder in one of two ways: facially, by challenging the sufficiency of the pleadings; or factually, by going past the pleadings and raising a factual controversy. *Gentek,* 491 F.3d at 330. Factual challenges strip the allegations in the complaint and notice of removal of the presumption of truthfulness, and they empower a court to "employ summary-judgment-like procedure[s] to examine affidavits and deposition testimony" to determine whether jurisdiction exists. *Id.* But when, as here, a defendant raises a facial attack, courts apply a standard "akin to that of a Rule 12(b)(6) motion to dismiss, and [] arguably even more deferential," *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 (6th Cir. 2011), accepting as true all factual allegations in the complaint and the notice of removal and resolving all contested issues of fact in the plaintiff's favor. *Gentek*, 491 F.3d at 330.

Whether asserting fraudulent joinder facially or factually, the removing party "faces a particularly heavy burden." *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. 2013). To defeat the fraudulent-joinder argument, the plaintiff need only show that "state law *might* impose liability on the resident defendant under the facts alleged." *Id.* (emphasis in original) (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)). "If there is a colorable basis for

5

predicting that a plaintiff may recover against non-diverse defendants, [the] Court must remand the action to state court. The district court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non-removing party." *Coyne v. American Tobacco*, 183 F.3d 488, 493 (6th Cir. 1999) (cleaned up).

Finally, when a court orders remand, the prevailing party may be entitled to "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Fee awards on remand aren't automatic, though. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Determining when and where this point is reached is the judgment call that a district court must make" when faced with a request for fees, and its decision is reviewable for abuse of discretion. *Kent State*, 512 F. App'x at 488, 492.

## LAW AND ANALYSIS

Defendants argue that Lemon has no colorable claim against the Taulbees—and that they're therefore fraudulently joined—on two fronts. First, Defendants claim that certain recent amendments to Ohio's civil-rights statutes preclude relief against the Taulbees as a matter of law; and second, that even if relief is possible as a legal matter, the Complaint fails to allege sufficient facts to support Lemon's claims. (*See generally* Docs. 1, 13). Lemon disagrees. (*See generally* Docs. 9, 15). And on top of that, he argues he's entitled to attorney's fees for having to argue against what he describes

6

as Defendants' "objectively unreasonable removal[]." (Doc. 9, #193 (quotation omitted)). As discussed below, the Court agrees with Lemon (albeit just barely) as to the fraudulent-joinder argument, but disagrees on attorney's fees. Take each in turn.

**A. Lemon's Claims Against the Taulbees Aren't Abrogated Under State Law, and His Allegations Against Them Are Sufficiently "Colorable" to Merit Remand.**

Defendants' argument that the Taulbees were fraudulently joined comes in two flavors. First, they argue that the Ohio Employment Law Uniformity Act's (ELUA) abrogation provision bars Lemon's claims against the Taulbees, making it impossible for him to recover against them under state law—and, therefore, also impossible for him to implead them as defendants to defeat federal diversity jurisdiction. (Doc. 13, #229–32). Second, they argue that, even if the ELUA doesn't bar Lemon's claims outright, his factual allegations fall short of plausibly alleging a case against the Taulbees. (*Id.* at #224–28). Both arguments fall short of meeting the "particularly heavy burden" Defendants face to justify removal on their fraudulent-joinder theory. *Kent State*, 512 F. App'x at 489.

**1. The ELUA's Abrogation Provision Exempts Lemon's Claims Against the Taulbees.**

The ELUA abrogation argument fails for two reasons. First, the relevant provision's terms expressly exempt from abrogation—and therefore preserve—the sorts of claims that Lemon brought against the Taulbees. Second, and relatedly, to the limited extent (if at all) that question is unsettled, the Court must resolve the uncertainty in favor of remand.

7

Start with the statutory text. All of Lemon's claims arise under the Ohio Civil Rights Act. Ohio Rev. Code Chapter 4112. That statute lists a bevy of prohibited discriminatory practices. Ohio Rev. Code § 4112.02(A)–(J). But the ELUA, a 2021 amendment designed to narrow certain types of liability under the Act, *see* H.B. 352 § 3, 133d Gen. Assemb. (Ohio 2021), abrogated claims "described in division (A)(24)(a) of section 4112.01 of the Revised Code against a supervisor, manager, or other employee of an employer."[3] Ohio Rev. Code § 4112.08(A). At first glance, that looks at least somewhat promising for the Defendants' argument that there is no colorable claim against the Taulbees; the Ohio statute no longer provides for certain types of claims against supervisors. But here's the rub: the claims that Lemon brought against the Taulbees, who are undisputedly "supervisors" for current purposes, aren't claims that are "described in division (A)(24)(a)." Instead, Lemon's claims are listed in division (A)(24)(b). (*See* Doc. 3, #84–86 (asserting claims under Ohio Revised Code §§ 4112.02(I) and (J), which are listed under § 4112.01(A)(24)(b))). As another court in this district explained, "[i]f the Ohio legislature intended [the abrogation provision] to bar individual liability for discriminatory practices in [division (A)(24)(b)], it would not have constrained [the provision's] effect to practices 'described in division (A)(24)(a).'" *Banks v. Geodis Logistics, LLC*, No. 2:24-cv-1595, 2024 WL 4833807, at *4 (S.D. Ohio Nov. 20, 2024). In other words, the natural reading of the abrogation

---

[3] The abrogation provision doesn't extend to claims against individual supervisors, managers, or employees, if they also count as an "employer" as the statute defines that term. Ohio Rev. Code §§ 4112.01(A)(2) (defining "employer"), 4112.08(A). But that exception to the abrogation provision isn't relevant here.

8

provision's plain language doesn't extend its operative effect to the type of claims that Lemon advances against the Taulbees.

Defendants' argument to the contrary is unpersuasive. Faced with the plain statutory text, all Defendants can muster is the assertion that "the exact meaning and intent behind the language of the amendments are actively being litigated in both state and federal courts throughout Ohio." (Doc. 13, #229). But the Court cannot find—and Defendants have not pointed to—any such active litigation, in any court. Instead, they cite a single opinion to support their statutory interpretation: *Smith v. Steris Corp.*, No. 1:24-cv-319, 2024 WL 1656580 (N.D. Ohio Apr. 17, 2024). (Doc. 13, #229). *Smith*, however, leaned almost exclusively on another decision—*Sherman v. Pub. Emps. Ret. Sys.*, No. 2:22-cv-4161, 2023 WL 6307632 (S.D. Ohio Sept. 28, 2023)—that has since been overturned. That is, in a later opinion in *Sherman* granting the plaintiff's motion for reconsideration, that court overruled the decision referenced immediately above, finding that the previous decision had interpreted the ELUA's abrogation provision too broadly. *Sherman v. Pub. Emps. Ret. Sys.*, No. 2:22-cv-4161, 2024 WL 3616249, at *3 (S.D. Ohio Aug. 1, 2024). And every other state- or federal-court opinion—and there are many—that the Court has found on the topic likewise agrees with the plain-language reading explained above. *See, e.g., Sherman*, 2024 WL 3616249, at *3 (collecting cases); *Calkins v. Danaher Corp.*, 739 F. Supp. 3d 615, 624–25 (N.D. Ohio 2024) (same); *Little v. Blue Stream Rehab*, No. 5:23-cv-2227, 2024 WL 1514542, at *5 (N.D. Ohio Apr. 8, 2024) (same).

9

In sum, the ELUA's abrogation provision plainly does not reach the claims Lemon brought against the Taulbees. And to the very limited extent the Court can credit Defendants' assertion that the question is unsettled, that fact would weigh even more heavily in favor of remand so that Ohio's courts could resolve this question of state law in the first instance.

> **2. Lemon's Factual Allegations Make Out a Colorable Claim—If Barely—Against At Least One Non-Diverse Defendant.**

Defendants' argument that Lemon failed to plead adequate facts to support his claims also fails, but this one is admittedly closer.

Right at the outset, the Court agrees that Lemon's allegations are dangerously sparse—so sparse, in fact, that his claims could plausibly be subject to dismissal. But the dismissal standard isn't at play here. Instead, the Court must remand (i.e., must find the joinder non-fraudulent) if there is even a "colorable basis for predicting that a plaintiff may recover against non-diverse defendants." *Coyne*, 183 F.3d at 493 (cleaned up). Indeed, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *Cordle v. Merck & Co, Inc.*, 405 F. Supp. 2d 800, 803 (E.D. Ky. 2005) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992)).

Measured against that very lenient standard, Lemon's allegations pass muster. By a thin margin, Lemon's allegations make it at least colorable that Chad aided and abetted Evans' alleged age discrimination, as Lemon claims in Count Five of his Complaint. (Doc. 3, #85–86). To start with, aiding-and-abetting claims require

10

a viable underlying discrimination claim—without that, there is nothing to have aided or abetted. *See Messer v. Summa Health Sys.*, 105 N.E.3d 550, 568 (Ohio Ct. App. 2018). One of the underlying claims here is for age discrimination against Defendant Evans. (Doc. 3, #81–82). The elements of that claim under Ohio law require a plaintiff to show that he "(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by a … person of substantially younger age." *Jones v. Bd. of Elections*, 2004-Ohio-4750 ¶ 12 (8th Dist.) (quoting *Kohmescher v. Kroger Co.*, 575 N.E.2d 439, 503 (Ohio 1991)). The allegations here make a colorable claim that Evans' conduct constituted age discrimination under those elements. First, Lemon adequately pleaded membership in the statutorily protected class by noting that he was sixty-four at the time of his termination. (Doc. 3, #79); *see* Ohio Rev. Code § 4112.14(A) (setting the minimum age for an age-discrimination claim at forty years old). Second, he was fired. (Doc. 3, #80). Third, he alleged that "[a]t all relevant times, his work performance met or exceeded the expectations of his supervisors." (*Id.* at #79). And finally, he alleged that he was replaced with a significantly younger employee. (*Id.* at #80; *see also* Doc. 1-7 (OCRC charge attached to Notice of Removal, alleging that Lemon was replaced with a man in his thirties)). At bottom, there's a colorable—perhaps even plausible—claim for age discrimination against Evans.

With that underlying claim for age discrimination in mind, turn to Lemon's claim that Chad aided and abetted that discrimination. Ohio Revised Code § 4112.02(J) makes it unlawful for any person to "aid, abet, incite, compel, or coerce

11

the doing of any act declared [elsewhere in the statute] to be an unlawful discriminatory practice." The statute doesn't define those terms, but Ohio case law supplies the standard: "to aid and abet, a person must 'actively participate in, or otherwise facilitate, another's discriminatory act.'" *McCann v. Ill. Tool Works Inc.*, No. 1:25-cv-648, 2025 WL 1928876, at *4 (N.D. Ohio July 14, 2025) (quoting *Martcheva v. Dayton Bd. of Educ.*, 179 N.E.3d 687, 706 (Ohio Ct. App. 2021)). But recall, it is only the *employer's* own acts that can be "unlawful discriminatory acts" under the statute. *See* Ohio Rev. Code §§ 4112.01(A)(2) (defining "employer"), 4112.02(A) (making it unlawful for "an employer" to discriminate based on age). So, the plaintiff must allege that the supervisor aided or abetted—in other words, actively participated in—the employer's discriminatory act. And here the alleged discriminatory act was firing Lemon on age-discriminatory grounds. In short then, the question is whether there are any factual allegations that support a claim that Chad actively participated in a discriminatory termination decision.

The Complaint certainly alleges that Chad actively participated in the termination itself—Lemon says Chad fired him. (Doc. 3, #80). But are there sufficient allegations that Chad participated in a *discriminatory* termination decision? The single on-point allegation in the Complaint that provides any indirect evidence of age discrimination reads: "During his tenure with Defendants, [] Lemon was continually referred to as 'old man' or called 'old fart.'" (Doc. 3, #80). That sentence doesn't even mention Chad. But given the standard that applies here—under which the Court must resolve all factual ambiguities in favor of remand—the Court can just barely

12

infer that Chad was, or at least may have been, one of those who "continually" referred to Lemon by those names, or at least that he tolerated others doing it in his presence. Either of those could potentially give rise to a "colorable basis for predicting," *Coyne*, 183 F.3d at 493 (cleaned up), that Chad harbored an age-based animus, such that Evans' decision, driven by Chad, was discriminatory, and that Chad "actively participate[d] in … [that] discriminatory act. *McCann*, 2025 WL 1928876, at *4.

All told, the Court finds that the aiding-and-abetting claim against Chad is sufficiently colorable to overcome Defendants' fraudulent-joinder argument. Whether the claim is *plausible*—or in other words whether it would survive a motion to dismiss—is another matter, and one that the Court declines to address, since the decision to remand strips the Court of jurisdiction over the merits of the case. Nor does it matter whether there is a colorable claim against the remaining Taulbee. Even one non-fraudulently joined Ohio citizen defendant suffices to defeat complete diversity and to require this Court to remand.

**B.     Despite the Court's Decision to Remand, Defendants' Arguments Were Objectively Reasonable, Foreclosing Lemon's Requested Fee Award.**

One matter remains: Lemon's motion for attorney's fees under 28 U.S.C. § 1447(c). As discussed above, "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. If Defendants' only basis for removal was their ELUA argument, *see supra* Part A.1, the Court would find its position objectively unreasonable, entitling Lemon to reasonable fees. *See Kent State*, 512 F. App'x at

13

489–93 (affirming the district court's award of attorney's fees where case law on the state-law question was so "lopsided" as to make the removing party's position unreasonable). But Defendants also argued another ground for removal: the sparsity of Lemon's factual allegations. And on that front, as described above, their arguments came closer to carrying the day. A single admittedly vague sentence in the Complaint was the margin of victory. With just a few ambiguous words standing between Defendants and a potentially successful removal, the Court doesn't find their removal attempt objectively unreasonable.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Lemon's motion, (Doc. 9), and **REMANDS** this case to state court. But because Defendants' attempt to remove wasn't objectively unreasonable, the Court **DENIES** Lemon's requested fee award. Finally, because the Court no longer has jurisdiction over this case, it **DENIES** all other pending motions, (Docs. 6, 10), **AS MOOT**, and **DIRECTS** the Clerk to **TERMINATE** this case on its docket.

    **SO ORDERED.**

August 15, 2025
**DATE**             **DOUGLAS R. COLE**
                     **UNITED STATES DISTRICT JUDGE**